W. ADAM DUERK  
Assistant U.S. Attorney  
ERIC E. NELSON  
Special Assistant U.S. Attorney  
U.S. Attorney's Office  
P.O. Box 8329  
Missoula, MT 59807  
105 E. Pine, 2nd Floor  
Missoula, MT 59802  
Phone: (406) 542-8851  
FAX: (406) 542-1476  
Email: adam.duerk@usdoj.gov  
Email: nelson.eric@epa.gov  

ATTORNEYS FOR PLAINTIFF  
UNITED STATES OF AMERICA



IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF MONTANA  
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 17-143-BLG-SPW |
|---|---|
| Plaintiff, | INDICTMENT |
| vs. | CONSPIRACY (Count 1)<br>Title 18 U.S.C. § 371<br>(Penalty: Five years imprisonment, $250,000 fine, and three years of supervised release) |
| CUSTOM CARBON PROCESSING, INC.,<br>PETER MARGIOTTA, and<br>MARK HURST,<br><br>Defendants. | CLEAN AIR ACT – GENERAL DUTY CLAUSE (Count 2)<br>Title 42 U.S.C. §§ 7413(c)(1), 7412(r)(1); 18 U.S.C. § 2<br>(Penalty: Five years imprisonment, $250,000 fine, and three years of supervised release) |



1

| | CLEAN AIR ACT – KNOWING ENDANGERMENT (Count 3) Title 42 U.S.C. § 7413(c)(5); 18 U.S.C. § 2 (Penalty: 15 years imprisonment, $250,000 fine for an individual person; $1,000,000 fine for an organization, and three years of supervised release) |
|---|---|

THE GRAND JURY CHARGES:

## INTRODUCTION

### A. Background

At all times relevant to this Indictment:

1. Defendant CUSTOM CARBON PROCESSING, INC. ("CUSTOM CARBON") was a corporation incorporated in the States of Wyoming and Texas, and registered to conduct business as a foreign corporation in the State of Montana.

2. Defendant PETER MARGIOTTA, a citizen of Canada, was the President and Director of CUSTOM CARBON.

3. Defendant MARK HURST, a citizen of Canada, was the Montana Project Manager for CUSTOM CARBON.

4. In or about the spring and summer of 2012, CUSTOM CARBON, under the direction of PETER MARGIOTTA and MARK HURST, began construction of the "Michels Disposal Well and Oil Reclamation Facility," located approximately eight miles southeast of Wibaux, Montana (hereinafter the "Michels facility").

5. The oil reclamation operation constructed at the Michels facility was designed to process unrefined, non-saleable "slop oil" into saleable pipeline standard crude oil. The disposal well operation was designed to dispose of "saltwater" or "production water" generated during oil and gas production.

6. The oil reclamation process designed and constructed by CUSTOM CARBON, under the direction of PETER MARGIOTTA and MARK HURST, utilized heated tanks, pumps, and oil processing equipment to separate saleable crude oil from water, wax, solids, and other contaminants present in the slop oil sent to the Michels facility by CUSTOM CARBON customers for reclamation.

7. The oil reclamation equipment at CUSTOM CARBON, designed and constructed at the Michels facility under the direction of PETER MARGIOTTA and MARK HURST, included several pieces of equipment open to the atmosphere, which allowed hazardous and flammable hydrocarbon vapors to vent out of the processing equipment and outside the building. Those pieces of equipment included a 1000-barrel capacity sump, a non-enclosed Shale Shaker, and a pot collecting processed oil from a worn and used Tricanter machine that was employed to separate oil, liquids, and solids into their individual components.

8. The Michels facility building was designed and constructed under the direction of PETER MARGIOTTA and MARK HURST to partially house six above-ground tanks heated by propane from the outside of the building. The half

of the tanks on the interior of the building, however, contained hatches designed to be opened to gain access to the tanks. Opening the hatches caused still more hydrocarbon vapors to be released to the surrounding atmosphere in the building and the seals on the hatches needed repair.

9. The Michels facility building did not have adequate ventilation to remove effectively the hydrocarbon vapors released by the oil reclamation equipment. Because of the release of hydrocarbon vapors into the surrounding atmosphere and inadequate ventilation, CUSTOM CARBON EMPLOYEES frequently had to open most of the eight large overhead doors built on the front of the facility in order to reduce the concentration of vapors in the processing building.

10. The Michels facility building did not have industry standard explosion-proof wiring, lighting and equipment suitable for a facility that is subject to releases of flammable hydrocarbon vapors.

11. On or about July 4, 2012, PETER MARGIOTTA and MARK HURST directed the opening of oil processing operations at the Michels facility before the implementation of appropriate electrical wiring, ventilation and other safety measures. On that date, MARK HURST sent an email message to PETER MARGIOTTA stating "The control panels must be moved asap with the explosion

proof wiring. We also run the risk of killing someone, not only our operators but also customers."

12. Beginning on or about July 27, 2012, CUSTOM CARBON employees at the Michels facility were directed by PETER MARGIOTTA and MARK HURST to accept shipments of highly volatile and flammable "natural gas condensate" or "drip gas" into their oil processing operations, in a purported effort to help thin and process the slop oil at the facility.

13. Beginning on or around October 2012, the facility operations foreman for CUSTOM CARBON made repeated attempts to notify PETER MARGIOTTA and MARK HURST that the natural gas condensate delivered to the Michels facility was not effective in helping to thin or process the slop oil in their operations, and, instead, was creating a dangerous situation due to its highly volatile and flammable nature. On occasion, the foreman would attempt to refuse to accept the shipments of natural gas condensate, but was told by MARK HURST that he had to accept them.

### December 29, 2012 Explosion

14. On or about December 29, 2012, a delivery of natural gas condensate was made to the Michels facility. During the offloading of the material into the Michels' facility's shale shaker equipment, hazardous and flammable vapors from the natural gas condensate filled the Michels facility building and spread out the

5

open bay doors where the truck delivering the condensate was located. The vapors reached an ignition source, causing an explosion that injured three employees and caused extensive damage to the Michels facility and the truck and trailer involved in the delivery.

### B. The Clean Air Act – General Duty Clause

15. The Clean Air Act imposes a general duty on owners and operators of stationary sources producing, processing, handling or storing an extremely hazardous substance to prevent accidental releases of the extremely hazardous substance into the ambient air from the stationary source. The general duty requires such owners and operators (1) to identify hazards that may result from such releases using appropriate hazard assessment techniques, (2) to design and maintain a safe facility taking such steps as are necessary to prevent releases, and (3) to minimize the consequences of accidental releases that do occur. 42 U.S.C. § 7412(r)(1).

16. The slop oil and natural gas condensate materials delivered to and processed by the Michels facility were extremely hazardous substances due to their flammable characteristics.

### C. The Clean Air Act – Knowing Endangerment

17. Under the Clean Air Act any person who knowingly releases into the ambient air any hazardous air pollutant listed pursuant to 42 U.S.C. § 7412, and

who knows at the time that he thereby places another person in imminent danger of death or serious bodily injury, has committed a crime.

18. The natural gas condensate delivered to the Michels facility on December 29, 2012, contained hexane and xylene, both of which are listed as hazardous air pollutants, pursuant to 42 U.S.C. § 7412(b)(1).

## COUNT 1
## CONSPIRACY

19. Paragraphs 1 through 18 are incorporated by reference as if set forth in full.

20. Beginning in approximately July, 2012, and continuing until approximately December 29, 2012, near Wibaux, in the State and District of Montana, and elsewhere, the defendants, CUSTOM CARBON, PETER MARGIOTTA and MARK HURST, and others known and unknown to the grand jury, knowingly conspired and agreed to commit an offense against the United States, namely to violate the Clean Air Act, in violation of 42 U.S.C. §§ 7413(c)(1), 7413(c)(5), and 7412(r)(1).

## OVERT ACTS

21. In furtherance of the conspiracy and to affect its object, CUSTOM CARBON, PETER MARGIOTTA, MARK HURST, and others known and unknown to the grand jury, committed numerous overt acts in the District of Montana and elsewhere, including, but not limited to, the following:

7

## Construction of the Michels Facility

22. In or about the spring and summer of 2012, CUSTOM CARBON, under the direction of PETER MARGIOTTA and MARK HURST, knowingly constructed the "Michels Disposal Well and Oil Reclamation Facility" in ways that permitted hydrocarbon vapors, extremely hazardous substances and hazardous air pollutants, to be released into the ambient air, including: failing to adhere to industry standards for constructing flammable and combustible liquid process buildings by not installing explosion-proof wiring, lighting, ventilation, equipment and associated components suitable for a facility that is subject to releases of flammable hydrocarbon vapors; failing to control ignition sources; failing to ensure adequate fire protection and suppression systems; failing to establish and implement practices to prevent spillage of flammable or combustible liquids; and otherwise failing to properly identify, analyze, document and mitigate hazards present in the Michels facility.

23. On or about July 4, 2012, PETER MARGIOTTA and MARK HURST directed the opening of oil processing operations at the Michels facility before appropriate electrical wiring, ventilation and other safety measures were implemented. On that date, MARK HURST sent an email message to PETER MARGIOTTA stating: "The control panels must be moved asap with the explosion

8

proof wiring. We also run the risk of killing someone, not only our operators but also customers."

**Acceptance of Extremely Hazardous and Flammable Substances**

24. Beginning on or about July 27, 2012, CUSTOM CARBON employees at the Michels facility were directed by PETER MARGIOTTA and MARK HURST to accept shipments of highly volatile and flammable "natural gas condensate" or "drip gas" into their oil processing operations, in a purported effort to help thin and process the slop oil at the facility.

**Disregard of Safety Warnings**

25. Beginning in or around October 2012, PETER MARGIOTTA and MARK HURST disregarded the facility operation's foreman's repeated warnings to notify the defendants that the natural gas condensate being delivered to the Michels facility was not effective in helping to thin and process the slop oil in their operations, and instead was creating a dangerous situation due to its highly volatile and flammable nature. On occasion, the foreman would attempt to refuse to accept the shipments of natural gas condensate, but MARK HURST ordered him to accept them.

26. On or about December 29, 2012, CUSTOM CARBON, as directed by MARK HURST, accepted a delivery of natural gas condensate at the Michels facility. During the offloading of the material into the Michels facility shale shaker

equipment, hazardous and flammable vapors from the natural gas condensate filled the Michels facility building and spread out the open bay doors where the truck delivering the condensate was located. The vapors reached an ignition source, causing an explosion that injured three employees and caused extensive damage to the Michels facility and the truck and trailer involved in the delivery.

All in violation of 18 U.S.C. § 371.

## COUNT 2
## CLEAN AIR ACT – GENERAL DUTY CLAUSE

27. Paragraphs 1 through 26 are incorporated by reference as if set forth in full.

28. On or about December 29, 2012, near Wibaux, in the State and District of Montana, the defendants, CUSTOM CARBON, PETER MARGIOTTA and MARK HURST, as owners and operators of a stationary source producing, processing, handling, and storing an extremely hazardous substance, namely flammable natural gas condensate, knowingly violated their general duty to prevent the accidental release of the extremely hazardous substance into the ambient air from the stationary source, in violation of 42 U.S.C. §§ 7413(c)(1) and 7412(r)(1) and 18 U.S.C. § 2.

## COUNT 3
## Clean Air Act – Knowing Endangerment

29. Paragraphs 1 through 26 are incorporated by reference as if set forth in full.

30. On or about December 29, 2012, near Wibaux, in the State and District of Montana, the defendants, CUSTOM CARBON, PETER MARGIOTTA, and MARK HURST, knowingly released into the ambient air a hazardous air pollutant listed pursuant to 42 U.S.C. § 7412, and knew at the time that they thereby placed another person in imminent danger of death or serious bodily injury, in violation of 42 U.S.C. § 7413(c)(5) and 18 U.S.C. § 2

*Pinkerton Theory of Liability*

31. Counts II and III are subject to a *Pinkerton* theory of liability.

A TRUE BILL

Foreperson signature redacted. Original document filed under seal.

_____
FOREPERSON

_____
KURT G. ALME
United States Attorney

_____
JOSEPH E. THAGGARD
Criminal Chief Assistant U.S. Attorney

Crim. Summons ____X____

Warrant: _____

Bail: _____